# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

STACY SIMMS,

        Petitioner,

v.                                                          No. CIV 10-1049 BB/LFG

TIMOTHY HATCH, Warden,

        Respondent.

## MAGISTRATE JUDGE'S FINDINGS
## AND RECOMMENDED DISPOSITION[1]

### Findings

1.      This is a proceeding on an application for writ of habeas corpus brought under 28

U.S.C. § 2254, filed May 16, 2011, and a supplemental or amended petition, filed June 20, 2011.[2]

[Doc. 9].  Petitioner Stacy Simms ("Simms"), currently confined at the Northeast New Mexico

Detention Facility in Clayton, New Mexico, challenges the Judgment, Sentence and Commitment

---

[1] Within fourteen (14) days after a party is served with a copy of these findings and recommendations, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such findings and recommendations.  A party must file any objections with the Clerk of the U.S. District Court within the fourteen-day period allowed if that party wants to have appellate review of the findings and recommendations.  If no objections are filed, no appellate review will be allowed.  *See, e.g.*, Wirsching v. Colorado, 360 F.3d 1191, 1197 (10th Cir. 2004) ("firm waiver" rule followed in Tenth Circuit holds that a party who fails to object to magistrate judge's findings and recommendations in timely manner waives appellate review of both factual and legal questions).

[2] The first pleading Simms filed in this proceeding was an *ex parte* Motion Requesting Funding for an Investigator and to Compel Discovery. [Doc. 1.] On the same day, November 4, 2010, Simms filed an *ex parte* supporting memorandum. [Doc. 3.] On an Order entered April 20, 2011, the Court denied Simms *ex parte* motion.  However, Simms was allowed to file a § 2254 petition, which he did on May 16, 2011.  [Doc. Nos. 5, 9.]

entered on June 1, 1999, by the Second Judicial District Court in <u>State v. Simms</u>, No. CRCR 97-00163 (Bernalillo County, New Mexico).  [Doc. 17, Exhibit A.]

2.      As grounds for federal habeas review, Simms raises five overlapping grounds for relief in his petition and amended petition [Doc. Nos 9, 12]:  (1) ineffective assistance of counsel for (a) failure to investigate; (b) failure to retain expert witnesses, regarding latent prints; (c) failure to limit the introduction of evidence due to the destruction of evidence; (d) failure to file pretrial motions regarding identification of Simms both in and out of court; and (e) failing to raise ineffective assistance of counsel claims and issues regarding the grand jury proceedings on appeal; (2) abuse of discretion and judicial bias regarding the state district court's failure to allow a continuance to locate witness Jeff Clark, the state court's permission for counsel to withdraw without a hearing, and the fact that the state court allowed Simms to be without an attorney for five months; (3) abandonment of counsel in post-conviction proceedings; (4) improperly withheld evidence before the indictment so that Simms would be forced to accept a plea; (5) mishandling of evidence by the Albuquerque Police Department, failure to preserve and disclose material, exculpatory evidence, and failure to preserve DNA swabs recovered from a second victim. [Doc Nos. 9, 12, 17, at 4-6.]

3.      On September 12, 2011, Respondent Timothy Hatch ("Respondent" or "Warden") filed an Answer, in which he raised several defenses.  Respondent argues that the petition should be dismissed as time-barred under 28 U.S.C. § 2244(d)(1) and that all claims except for one portion of the second claim are procedurally defaulted. [Doc. 17, at ¶¶ 8, 14.] Respondent further asserts that Simms did not allege or establish any violation of a federal constitutional right requiring review and relief under 28 U.S.C. § 2254.

4.      On November 28, 2011, Simms filed a reply in opposition to the Respondent's positions, with 54 pages of exhibits. [Doc. 24.]

### Factual and Procedural History[3]

5.      Simms was charged with 11 offenses, arising from attacks on two women in Albuquerque, during 1995. [Doc. 17, Ex. H.] The Bernalillo County Grand Jury returned indictments against Simms for criminal sexual penetration ("CSP") (four alternative theories), kidnapping, aggravated burglary, aggravated battery, and robbery. [Doc. 17, Ex. I.] This set of crimes allegedly was committed against Margaret Padilla ("Padilla") on July 30, 1995. The grand jury also indicted Simms for attempted CSP, kidnapping, aggravated burglary, robbery, and criminal damages to property in relation to alleged crimes against Marsha Pino ("Pino") on August 3, 1995. [Id.] The charges relating to each woman were severed. [Doc. 17, Ex. H.]

6.      On February 22-24, 1999, Simms proceeded to a jury trial before the Honorable Diane Dal Santo as to the crimes relating to Pino. Simms was convicted of aggravated burglary and kidnapping of Pino, but the jury was unable to reach verdicts on the other counts, and they were later dropped. [AR 17, Ex. H, I.]

7.      As to the six counts relating to crimes against Padilla, Simms moved to suppress evidence and to dismiss for denial of his right to a speedy trial. When these motions were denied, he entered a plea of no contest to five counts of the indictment on May 11, 1999. These counts were CSP in the second degree, kidnapping, aggravated burglary, aggravated battery, and robbery. [Doc. 17, Ex. A.] In the plea and disposition agreement, Simms reserved the right to appeal the denial of the motion to suppress and the motion relating to speedy trial rights. [Doc. 17, Ex. C, H.]

---

[3]The recitation of the factual and procedural background are taken from the attachments to the Answer. [Doc. 17, exhibits.]

8.      On May 11, 1999, Simms was sentenced on both cases to a period of incarceration of 57 years. [Doc. 17, Ex. A.] Twenty-nine (29) years of the sentence was to be served consecutively to Simms' "present sentence of 60 years," another sentence previously imposed, and 28 years of the sentence was to be served concurrently to that other sentence previously imposed.[4] [Doc. 17, Ex. A, H.]

9.      On June 1, 1999, the Judgment, Sentence and Commitment was entered. [Doc. 17, Ex. A.]

10.     On June 29, 1999, Simms filed a Notice of Appeal. [Doc. 17, Ex. E.]

11.     On September 9, 1999, the New Mexico Court of Appeals issued a Notice of Proposed Summary Affirmance. [Doc. 17, Ex. F.] The Court of Appeals addressed Simms's claims of (1) speedy trial violation; (2) sufficiency of the evidence as to Simms' identification; and (3) denial of the motion to suppress.  The Court's summary proposal noted that there was a nearly 25 month delay between Simms' arrest date and the trial date.  The Court of Appeals recounted the procedural history including requests for extensions by both parties, the assignment of a new judge, Simms' excusal of that judge, withdrawal of original defense counsel, and new counsel's request for additional time to prepare for trial.  The Court of Appeals examined who was responsible for the various delays and determined the extensions were caused equally by the State and Simms.  The Court proposed to find that Simms' late assertion of the speedy trial right and his ongoing incarceration for unrelated charges did not weigh in his favor.  Thus, the Court found that Simms

---

[4]The previous sentence arose out of Bernalillo County Cause No. 96-247, involving unrelated charges.  Simms' appeal from the convictions in that case, State v. Simms, Ct. App. 20,281, which also raised a speedy trial violation, is pending. [Doc. 17, Ex. H.]

was not prejudiced by the delay and proposed holding that Simms' right to a speedy trial was not violated.

12.     With respect to the sufficiency of evidence claims(s), the Court of Appeals examined the evidence of a fingerprint sliver found on a screen at the point of entry to the house.  The Court proposed to hold that there was sufficient evidence from which the jury could have concluded that Simms was the person who removed the screen to gain access to the house. [Doc. 17, Ex. F, at 6.] Regarding Simms' motion to suppress evidence of body standards based on his argument that the standards were obtained pursuant to a search warrant in a different case, the Court reviewed Simms' argument and presumed the trial court did not err in denying the motion to suppress. [Doc. 17, Ex. F, at 7.]

13.     On February 21, 2000, Simms filed his brief-in-chief, arguing that the 25 to 27.5 month delay in a simple case such as his was excessive and presumptively compromised the reliability of the trial. [Doc. 17, Ex. H, at 5.] Simms further asserted that the State failed to prove beyond a reasonable doubt that he was the person who attacked Pino, or, in the alternative, that the evidence was insufficient to prove a kidnapping occurred.  Third, Simms contended that the trial court erred in denying his motion to suppress the body samples taken from him pursuant to a warrant issued in another case of his.

14.     On April 3, 2000, the State filed its answer brief [Doc.17, Ex. I], and on April 26, 2000, Simms filed a reply [Doc. 17, Ex. J].

15.     On October 31, 2000, the Court of Appeals issued a Memorandum Opinion affirming Simms' Judgment and Sentence. [Doc. 17, Ex. K.] The Court observed that Simms was a serial rapist having been previously convicted of sexual assault and related crimes on more than one

occasion.  His present appeal involved two additional assaults occurring within days of each other in the Summer, 1995.

16.     On November 20, 2000, Simms filed a Petition for Writ of Certiorari in the New Mexico Supreme Court, raising three issues: (1) whether the Court of Appeals erred in concluding that his right to a speedy trial was not violated; (2) whether the Court of Appeals erred in concluding that the State proved beyond a reasonable doubt that Simms was the person who attacked Pino, or, in the alternative, in concluding that sufficient evidence proved a kidnapping occurred; and (3) whether the Court of Appeals erred in affirming the trial court's denial of the motion to suppress body samples. [Doc. 17, Ex. L.]

17.     On December 21, 2000, the New Mexico Supreme Court denied the petition for writ of certiorari and issued a Mandate on February 5, 2001. [Doc. 17, Ex. M, O.] Simms did not file a petition for writ of certiorari with the United States Supreme Court.

18.     On February 11, 2002,[5] Simms, acting *pro se*, filed a state habeas petition. [Doc. 17, Ex. P.] In the state habeas petition, Simms argued his attorney was constitutionally ineffective; evidence was not preserved or was mishandled, specifically in reference to the screen where fingerprints were found; and Albuquerque Police Department ("APD") mishandled the DNA analysis or samples related to the rape kit and alleged crimes against Padilla. [Doc. 17, Ex. P, at 3-6.] Simms further asserted that a fingerprint lifted from a glass which Padilla stated the assailant drank from, but that did not match Simm's prints, was lost or destroyed; that the State improperly withheld discovery thereby causing a delay in the proceedings; and that the State failed to disclose material, exculpatory evidence, including a videotape which contained video of Pino, Simms and others,

_____

[5]Respondent's Answer indicates Exhibit P was filed February 11, 2004 [Doc. 17, at 7], but an examination of the pleading shows the filing date as Feb. 11, 2002. [Doc. 17, Ex. P.]

which would have shown Pino drinking wine in Pino's home, Simms helping Pino rearrange household furniture, etc., and Pino stating Simms was very helpful. [Id., at 6-8.] Simms contended the jury would have found him not guilty, had the full video been presented at trial. [Id., at 10.]

19.      In addition, Simms argued that his attorney was constitutionally ineffective based on a number of grounds.  Appointed attorney Joseph Campbell allegedly failed to conduct any pretrial investigation to establish an alibi for Simms, failed to interview individuals that might corroborate alibis for Simms, failed to interview Simms' employer who would have corroborated alibis for Simms, and waived Simms' constitutional rights to a speedy trial.  Attorney Campbell purportedly stated in open court that he would be ineffective as he had not conducted an adequate pre-trial investigation, and Simms similarly informed the Court that his counsel was ineffective.  Moreover, with respect to earlier counsel, Floyd Lopez, Simms argued that he, too, was ineffective for refusing to file pretrial motions, requiring Simms to research his own motions and to "force counsel to file motions," failing to interview more than a single witness who could establish alibis for Simms, failing to investigate "latents" found at Padilla's home, and failing to supply attorney Campbell with information that an investigator had corroborating Simms' alibis. [Doc. 17, Ex. P, at 13-14.]

20.      Simms also asserted in the state habeas petition that his attorneys were both ineffective for failure to retain an expert witness to independently examine scientific evidence obtained in Padilla's case and to counter the State's expert witness. [Id., at 16.] Simms argued his attorney failed to pursue pretrial motions to limit "in court and out of court identification." According to Simms, the police report indicated Pino stated the intruder was Hispanic, but had never seen his face.  [Id., at 18.]  In addition, Simms contended that counsel was ineffective for failure to pursue a motion to suppress "latents" found at Pino's home.  Again, Simms argued that the State negligently lost the screen and failed to preserve samples of testing so that Simms could make an

independent analysis of the test results.  Simms argued that his attorney failed to file motions to limit the introduction of evidence based on the State's failure to preserve that evidence. [Id., at 20.]

21.     Simms asserted that his appellate attorney was ineffective for failing to raise the ineffective assistance of counsel claims on direct appeal.  Simms also contended that his appellate counsel ignored the cumulative errors of trial counsel and directed Simms to raise the ineffective assistance of counsel claims in his state habeas proceeding. [Id., at 21.]

22.     The last claims raised in Simms' state habeas petition relate to alleged "judicial bias and abuse of discretion."  Simms argued that the trial court failed to ensure that he was represented by effective counsel through all proceeding because Simms was without an attorney for the first four months of proceedings.   Simms contended that his first appointed counsel was permitted to withdraw and the Court then failed to hold an evidentiary hearing concerning the "conflict of interest by [attorney] Lopez and [Simms] to ensure that [Simms] would not be prejudiced by Mr. Lopez's withdraw."  Simms was forced to proceed to trial without crucial alibi witnesses whom attorney Lopez had contacted and who would have testified on behalf of Simms.  However, attorney Lopez had not provided this information to attorney Campbell.  The Court was aware of this issue and should have continued the trial or ordered attorney Lopez to ensure that attorney Campbell had all of the key alibi information.  Simms argued that the trial court abused its discretion by denying the defense a continuation to contact a witness who would impeach the testimony of the State's primary witnesses.  The alibi witness would also have testified that the State withheld crucial exculpatory evidence. [Id., at 23.]

23.     Over two years passed before the State Court issued an Order on September 15, 2004, denying Simms' habeas petition for lack of merit.  State Court Judge Mark A. Macaron addressed Simms' claims in a three-page Order.  [Doc. 17, Ex. Q.]

8

24.     Simms did not file for a petition for writ of certiorari as to the denial of the state habeas petition and did not file a motion for extension of time to file such petition. [Doc. 17, p. 7.]

25.     Over six years passed from the date Simms' judgment became final to the date he filed the present federal habeas petition.

## Discussion

### I.     One-Year Time Bar

26.     The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) "establishes a one-year limitations period for state prisoners to file for federal habeas relief, which 'run[s] from the latest of' four specified dates." Gonzalez v. Thaler, 132 S.Ct. 641, 652-53 (Jan. 10, 2012) (internal citation omitted).  The one-year limitations period is calculated from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review," "the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State Action" or "the date on which the factual predicate of the claim could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(A), (B), (D).

27.     In Gonzalez, the United States Supreme Court observed that "the [] judgment becomes final 'when [the] Court affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari,' of, if a petitioner does not seek certiorari, 'when the time for filing a certiorari petition expires.'" Gonzalez, 132 S.Ct. at 652-53 (*citing* Clay v. United States, 537 U.S. 522 (2003)) (analyzing timeliness of § 2255 petition with respect to one-year limitation period).

28.     The State argues that Simms' conviction became final following his direct appeal and the Court of Appeals December 21, 2000 Order denying certiorari review.[6]  [Doc. 17, Ex. N.] Simms had 90 days to file a petition for writ of certiorari to the United States Supreme Court but did not do so.  Thus, the one-year limitations period began to run on March 21, 2001, 90 days after December 21, 2000.  *See* Gonzalez, 132 S.Ct. at 652 (the judgment becomes final for those petitioners who do not seek review in the Supreme Court when the time for pursuing some review expires).

29.     Because the limitations period is tolled by any time spent pursuing state post-conviction relief by means of a properly filed application for habeas relief, 28 U.S.C. § 2244(d)(2), the Court looks next to dates related to Simms' state habeas proceedings.  *See, e.g.,* Titsworth v. Mullin, 415 F. App'x 50, 56 (10th Cir. Feb. 14, 2011) (unpublished) ("[u]sually the running of the statute of limitations is suspended while a prisoner is pursuing relief in the state courts").

30.     In accordance with 28 U.S.C. 2244(d)(1), Simms had one year from March 21, 2001, or until March 21, 2002, to file a federal habeas petition or other application for post-conviction relief.  On February 11, 2002, Simms filed his state habeas petition. [Doc. 17, Ex. P.] The limitations period was tolled as of February 11, 2002, leaving Simms 38 days of the one-year limitations period to bring his federal habeas petition.[7]

---

[6]In Gonzalez, the Supreme Court clarified that the direct review process "concludes" or "expires," depending on whether the petitioner pursues or foregoes direct appeal to the Supreme Court.  The date of the mandate is not pertinent to the computation of time.  Gonzalez, 132 S.Ct. at 652-54.

[7]Respondent's discussion of the limitations period calculation is inaccurate and confusing.  *See, e.g.,* "Petitioner did not file a petition pursuant to . . . § 2254 . . . to toll the time until the filing of the state habeas corpus petition on February 11, 2002." [Doc. 17, at 11]  (incorrectly citing Ex. Q since Ex. P is the state habeas petition).  That statement is accurate, but then Respondent states the time lapse from March 21, 2002 to February 11, 2004 is 327 years. [Doc. 17, at 11.] A review of the pleadings indicates that the period at issue is from March 21, 2002 to February 11, 2002, a period of 327 days.  The Court assumes Respondent meant February 11, 2002, not 2004.

31.     On September 15, 2004, the State Court issued an Order denying Simms' state habeas petition. [Doc. 17, Ex. Q.] The period from February 11, 2002 to September 15, 2004 is tolled. Simms then had thirty days, until October 15, 2004, to file a petition for writ of certiorari to the New Mexico Supreme Court.  *See* NMRA 12-201(A)(2) (parties have 30 days to file a notice of appeal after the judgment or order appealed from is filed); Holloway v. Hatch,  250 F. App'x 899, 900 (10th Cir. Oct. 12, 2007) (unpublished) (same).  Simms did not file a petition for writ of certiorari or a request for extension to file the petition.  His remaining 38 days began to run as of October 15, 2004, leaving him until November 22, 2004, to timely file his federal habeas petition.

32.     Six and one-half years later, on May 16, 2011, Simms filed the present federal habeas petition. [Doc. 9.] Clearly, Simms' federal filing occurred more than six years after the one-year limitations period.  Even if the Court were to consider the first motion Simms filed in this federal proceeding [Doc. 1, motion requesting funds], that November 4, 2010 pleading also falls years outside the applicable applications period.

33.     Thus, under a strict application of the one-year limitations period to Simms' filings, his federal habeas petition is time-barred and subject to dismissal.

34.     Simms makes several arguments as to why his federal habeas petition should be deemed timely, notwithstanding the delay of over six years in filing the federal petition.  The Court first addresses the issue of equitable tolling.

35.     Simms argues that "extra-ordinary [sic] circumstances have prevented [him] from filing this petition within one (1) year after the denial of his direct appeal." [Doc. 9, at 26.] He specifically claims that attorney Sophie Cooper, who was appointed to represent Simms in the state habeas proceeding, led him to believe that she continued to represent him after the September 15, 2004 denial of the state habeas petition. [Id.] Based on a letter Simms received from attorney

11

Cooper, he believed Cooper would file his "appeal to the New Mexico Supreme Court, or a motion for reconsideration." [Id.] Simms further contends that he filed "numerous motions to the [state] district court to appeal the decision asking for reconsideration of its order . . . ." [Id.] Simms explains that he was able to contact the court finally to ask about the status of his "petition" and was told that "all of his motions were forwarded to the Public Defender because the record showed that he was represented by counsel." [Id., at 27.] He claims the State Court informed him it could not accept his *pro se* filings at that time.  Other than the letters from attorney Cooper that Simms attached to pleadings, Simms provided no dates to substantiate when he filed the *pro se* pleadings or when he contacted habeas counsel after September 15, 2004.

36.     Because of Simms' above-described contentions and alleged abandonment of counsel, he claims he is entitled to equitable tolling.  Simms argues that he could not have known when the AEDPA clock would start because he was relying on counsel or did not have the pertinent information as to time requirements. [Id., at 28.]

## II.   **Equitable Tolling**

37.     In the Tenth Circuit, it is well established that "AEDPA's one-year statute of limitations is subject to equitable tolling ... only in rare and exceptional circumstances." Gibson v. Klinger, 232 F.3d 799, 808 (10th Cir. 2002) (quotation omitted).  Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." Pace v. DiGuglielmo, 544 U.S. 408, 418, *reh'g denied*, 545 U.S. 1135 (2005).  Put differently, equitable tolling is appropriate "when a prisoner is actually innocent, when an adversary's conduct—or other uncontrollable circumstances—prevents a prisoner from timely filing, or when a prisoner actively

pursues judicial remedies but files a defective pleading during the statutory period." <u>Gibson</u>, 232 F.3d at 808 (citations omitted).

### A. *Extraordinary Circumstances*

38.     The Tenth Circuit has held that "ignorance of the law, even for an incarcerated *pro se* petitioner, generally does not excuse prompt filing." <u>Marsh v. Soares</u>, 223 F.3d 1217, 1220 (10th Cir. 2000) (quotation omitted), *cert. denied*, 531 U.S. 1194 (2001).   Moreover, "[a]ttorney miscalculation is simply not sufficient to warrant equitable tolling," without more, because habeas petitioners have no constitutional right to counsel.  <u>Lawrence v. Florida</u>, 549 U.S. 327, 336–37 (2007).  However, when attorney error rises to the level of egregious misconduct, the Court has allowed for equitable tolling.  *See* <u>Fleming v. Evans</u>, 481 F.3d 1249, 1255–57 (10th Cir. 2007) (finding attorney's misconduct was sufficiently egregious to justify equitable tolling of the AEDPA limitations period).

39.     In a recent United States Supreme Court decision, the Court held that the petitioner had shown the requisite "cause" to excuse a procedural default and reversed the Circuit Court opinion to the contrary, so that the question of "prejudice" could addressed.  <u>Maples v. Thomas</u>, __ S.Ct. __, 2012 WL 125438, **4, 10 (Jan. 18, 2002).[8]  In so concluding, the Supreme Court observed that negligence on the part of a prisoner's postconviction attorney does not qualify as "cause," because the attorney is the prisoner's agent.  Thus, under "well-settled principles of agency law," the principal [petitioner] bears the risk of negligent conduct on the part of his agent.  <u>Id.</u>, *10 (internal citations omitted).

---

[8]The Supreme Court observed that there was no reason why the distinction between attorney negligence and attorney abandonment should not hold in both the context of a federal time bar or cause excusing a procedural default in state court.  <u>Maples</u>, 2012 WL 125438, *11 n.7.

40.     However, the Supreme Court found a "markedly different situation" presented by Maples. Id. In Maples, the attorney abandoned his client without notice and occasioned the default. The Court reasoned that the acts or omissions of an attorney who withdraws "cannot fairly be attributed to [the client]." Id. (internal citations omitted).

41.     Although the Court's decision in Maples addressed a question of procedural default, the Court found instructive its recent decision in Holland v. Florida, 560 U.S. __, 130 S.Ct. 2549 (2010). Id. Holland, like Simms, missed the one-year limitations deadline prescribed by 28 U.S.C. § 2244(d) for filing his federal habeas proceeding. Id. In Holland, the Court examined whether equitable tolling applied and whether an attorney's unprofessional conduct could ever constitute an "extraordinary circumstance" justifying equitable tolling. Id. The Holland petitioner argued that his attorney "had detached himself from any trust relationship with his client." Id., at *11 (internal citation omitted). Like Simms, Holland argued "[My lawyer] has abandoned me." Id. See, e.g., Nara v. Frank, 264 F.3d 310, 320 (3d Cir. 2001) (ordering a hearing on whether a client's effective abandonment by his attorney merited tolling of one-year deadline).

42.     In further discussing Holland, the Maples Court noted the "essential difference between a claim of attorney error, however egregious, and a claim that an attorney had essentially abandoned his client." Id., at *11 (internal citation omitted).

> Holland's plea fit the latter category: He alleged abandonment "evidenced by counsel's near-total failure to communicate with petitioner or to respond to petitioner's many inquiries and requests over a period of several years." . . . If true, . . . "petitioner's allegations would suffice to establish extraordinary circumstances beyond his control[:] Common sense dictates that a litigant cannot be held constructively responsible for the conduct of an attorney who is not operating as his agent in any meaningful sense of that word."

Id. (internal citations omitted).

43.     Here, Simms argues that he filed numerous *pro se* pleadings in State Court that were refused purportedly because Simms was still represented by counsel.  Other than Simms' word, there is no evidence of record as to these filings.  However, the State Court docket sheet indicates that after Simms' state habeas petition was filed on February 11, 2002, apparently counsel was appointed to represent Simms in the state habeas proceedings as of June 4, 2002.  Counsel for Simms was allowed to file an amended state habeas petition, to which Respondent then had 30 days to file a response.[9]  A motion for extension of time to file the amended habeas petition was filed on July 2, 2002 and granted.

44.     On July 30, 2002, attorney Sophie Cooper entered an appearance for Simms in the habeas proceeding.   Subsequent to her entry of appearance, she filed numerous requests for extensions to file an amended habeas petition, all of which were granted. [*See, e.g.,* Doc. 17, Ex. R, docket entries of 8/7/02, 2/6/03, 7/31/03, 10/21/03, 12/16/03, 2/9/04.]

45.     On April 8, 2004, attorney Cooper wrote Simms stating that she had been promoted within the Office of the Public Defender and would not complete Simms' case.  Instead, John Walker was to take Cooper's caseload.  Cooper stated that attorney Walker would be contacting clients within 4-6 weeks of her letter. [Doc. 12, 4/8/04 letter from Cooper to Simms.] There is no indication that attorney Walker contacted Simms.  Respondent filed no affidavits by Cooper or Walker.

46.     On April 8, 2004, attorney Walker entered an appearance for Simms.  A stipulated order granting yet another extension of time was filed June 11, 2004, stating that Simms "shall file an amended petition" or notice that he would not file such petition by August 1, 2004.  No amended

---

[9]Respondent never filed an answer/response to the state habeas petition.

state habeas petition was ever filed.  On September 15, 2004, the State Court denied the state habeas

petition. [Doc. 17, Ex. Q.]

47.     On September 15, 2004, State Court Judge Macaron sent a cover letter to attorney

Cooper with the Order dismissing Simms' state court petition.  The cover letter stated that Simms

was not precluded from pursuing "appellate remedies if he so desires." [Doc. 12, 9/15/04 letter from

Macaron to Cooper.]  However, Simms' habeas attorney did not file a petition for writ of certiorari.

Instead, on September 23, 2004, notwithstanding Walker's entry of appearance on April 8, 2004,

attorney Cooper wrote Simms informing him she had kept his case and would continue her

representation of his habeas claim even though she no longer was with the habeas unit.  She

enclosed a copy of the Court's September 15, 2004 decision.  She stated she was not surprised by

the decision and was "giving thought as to the manner in which I will proceed and will keep you

advised of my thoughts." [Doc. 12, 9/23/04 letter from Cooper to Simms.]

48.     As stated earlier, Simms' remaining 38 days of the one-year limitations period had

began to run again as of October 15, 2004.  Attorney Cooper's letter did not mention deadlines or

any intention to file a petition for writ of certiorari within the applicable 30-day time period, and

there is no indication that Cooper advised Simms of "her thoughts."

49.     On November 5, 2004, Cooper again wrote Simms stating she was in receipt of his

letter[10] concerning his habeas corpus petition.  Attorney Cooper wrote–

> In reading your concerns about the Court's order, I must tell you that
> the decision is not binding.  The judge indicated that, in its discretion
> that he may redetermine his decision when we submit a motion for
> reconsideration.

---

[10]Simms' letter is not part of the record.  Based on Cooper's response letter, however, it appears
Simms raised issues of possible time constraints with Cooper.

Presently, my caseload is very backlogged so unfortunately everything will take time. Your concerns about time constraints are understandable, but I assure you they are unwarranted. You can still file your federal habeas petition at the conclusion of this case if necessary.

Currently, I am in contact with the judge and if something changes I will notify you. If you have concerns, please contact me by writing, I'm sorry but I am not available to take telephone calls, but I will respond as soon as possible.

[Doc. 24, Nov. 5, 2004 letter from Cooper to Simms.]

50.     The habeas attorney did not file anything further in that proceeding. Simms' deadline for filing his federal habeas petition, contrary to counsel's advice, elapsed on November 22, 2004.

51.     Here, where Simms' appointed habeas counsel gave him inaccurate and misleading written advice that he need not be concerned with time constraints and could file a federal habeas petition at the conclusion of the case, the Court concludes that Simms encountered "extraordinary circumstances" that might justify equitable tolling. Simms' allegations of attorney abandonment may suffice to establish extraordinary circumstances beyond his control. Put differently, a litigant in Simms' position should not be held responsible for the conduct or omissions of his attorney who was "not operating as his agent in any meaningful sense of that word." *See* Holland, 130 S.Ct. at 2568. Indeed, there is no evidence state habeas counsel informed Simms of the multiple requests for extension that were sought and granted to file an amended habeas petition. Similarly, no explanation was given as to why the amended state habeas petition was never filed after Cooper or Walker entered an appearance and received extensions over a period of several years.

52.     The Court observes, however, that its finding of extraordinary circumstances gives Simms the benefit of the doubt. This is true because numerous courts have concluded that an attorney's negligence and his/her misinformation are not sufficient to demonstrate extraordinary

17

circumstances.  *See, e.g.,* Fleming, 481 F.3d at 1255-56 (collecting cases).  For example, courts have reasoned that a habeas attorney's negligent misinformation is not generally a basis for equitable tolling because "attorney negligence is not extraordinary and clients, even if incarcerated must 'vigilantly oversee,' and ultimately bear responsibility for, their attorneys' actions or failures.  Id. (citation omitted).  "[A] mistake by a party's counsel in interpreting a statute of limitations does not present the extraordinary circumstance beyond the party's control where equity should step in to give the party the benefit of his erroneous understanding."  Id. (citation omitted).

53.     In Fleming, however, the Tenth Circuit concluded that the petitioner demonstrated sufficient extraordinary circumstances and diligence based on a distinguishable set of facts.  After observing the petitioner's attorney's failure to follow through in filing a petition, the petitioner drafted his own petition and submitted it to counsel for filing, with the result that counsel failed to file it until after the limitations period expired.  Id. at 1256.  Under that set of facts, the Court found extraordinary circumstances were present and that the petitioner had "vigilantly overseen" his attorney's failures.  Moreover, in Fleming, the petitioner requested that the limitations period be equitably tolled for about a one-year period, rather than the six years at issue here.  *See id.* at 1255 (limitations period should be tolled from July 25, 2003 until August 27, 2004).

54.     Nonetheless, the Court determines that Simms encountered extraordinary circumstances based on an analysis of the pertinent law and facts of this case.

### B.     Diligence

55.     Even assuming extraordinary circumstances stood in Simms' way, he still must also demonstrate that he pursued his federal claims diligently.  Holland, 130 S.Ct. at 2562; Yang v. Archuleta, 525 F.3d 925, 928 (10th Cir. 2008) (generally, equitable tolling requires satisfaction of two elements – that extraordinary circumstances stood in the petitioner's way, and that the petitioner

was pursuing his rights diligently).  The diligence required for equitable tolling purposes is "reasonable diligence," not  "maximum feasible diligence." Holland, 130 S.Ct. at 2565 (internal citations and quotations omitted).

56.    Simms' summary and unsupported assertions fall short of showing the required diligence in pursuing his rights when viewed against the delay of over six years in filing his federal habeas petition.  Therefore, the Court finds Simms did not satisfy his burden to establish equitable tolling and will recommend Simms' federal habeas petition be denied as untimely.

57.    In reaching this finding, the Court carefully reviewed all of Simms' assertions of diligence, which are repeated throughout many of his pleadings.  For example, in Simms' *ex parte* motion, he stated that habeas counsel Cooper "ceased all communications with petitioner" and that Simms made several attempts to contact her. [Doc. 1, at 6.] Simms further argued that after hearing from Cooper about the September 15, 2004 adverse habeas decision, Simms filed "numerous motions to the Court regarding this case," but did not receive responses from the State court or counsel.  "Petitioner has tried to contact his post conviction counsel (State) numerous times without any success." "Because the State Court record showed that petition was represented by counsel, all motions which he had filed with the exception of the last two have been forwarded to the Habeas Unit of the Public Defenders, which have ignored the motions."  [Doc. 1, at 16.]  Simms provided no dates as to any of these attempted filings or communications, and no copies of those attempted filings. However, one of his *pro se* motions (seeking discovery) was filed in State Court in May 2010, but denied. [Doc. 2, exhibits; Doc. 17, Ex. R.] The State Court docket indicates between September 15, 2004 and May 28, 2010, nothing was filed in the state habeas case.

58.    In Simms' federal petition, he states that habeas attorney Cooper abandoned him after Cooper interviewed a forensic examiner she hired, who turned out, according to Simms, to have

19

worked on the criminal case and therefore, had an actual conflict.  After Simms informed Cooper of the conflict, "communication all but ceased" between Simms and Cooper.  Simms argues he contacted Cooper by telephone as to the September 15, 2004 State Court decision, and also contacted attorney Walker, who told Simms that he did not represent Simms and was not going to "clean up Sophie[] [Cooper's] mess."  "Mr. Simms is in a 'black hole' unable to file in the State Court to perpetuate proceedings, but abandon [sic] by counsel."  [Doc. 9, at 23, 24, 25.]

59.     Simms argues he could not have been more diligent in his pursuit of habeas relief, *e.g.,* "Mr. Simms' diligence is unmistakable and remarkable for a person who has pursued post-conviction relief, from prison, in a pro-se manner for almost the entire proceeding[,]" "his diligence in efforts to seek post-conviction review are evident and shown by his timely filing of the state petition[,]" he was able to find out about the September 15, 2004 decision by having his sister check the State Court docket, he initiated contact with attorney Cooper about the September 15, 2004 decision, "Mr. Simms continued to write follow-up letters to counsel in efforts to confirm that counsel would file appellate pleadings," he attempted to contact the court by telephone when his *pro se* motions were not accepted, and the prison staff's failure to abide by policy interfered with Simms' attempts to call the State Court and eliminated any record of the mail he sent. [Doc. 24, at 11-12.]

60.     However, Simms fails to show what specific actions he took between late 2004 and late 2010.  Most of his contacts or attempted contacts with habeas counsel occurred in the 2004 time frame.  Simms attributes the six-year delay in filing a federal habeas petition, at least in part, to his contention that the Second Judicial District court "has a very slow process in which habeas claims are adjudicated, [sic] it is not unheard of to wait 5-10 years for the court to rule on the petition." [Doc. 24, at 11.]

61.     The Court concludes that Simms did not satisfy his burden to show that he acted with reasonable diligence in pursuing his claim during the pertinent six-year period.  In order to meet his burden of showing diligence, the petitioner must allege "with specificity" the steps he took in pursuing his federal claims.  Yang, 525 F.3d at 930.  Simms' assertions of telephone calls and attempted pleadings are summary in nature and do not demonstrate the required specificity to show reasonable diligence in the pursuit of his claim.  *See, e.g.,* Watson v. Milyard, 335 F. App'x 741, 743 (10th Cir. Jun. 24, 2009) (unpublished) (the petitioner's "bare allegation" that he had "diligently pursued" his claims was "insufficient, standing alone, to justify equitable tolling[;]" in addition, the court noted it had very little detail about what the petitioner wrote in letters requesting help or direction from the courts as the letters were not in the record), *cert. denied*, 130 S.Ct. 1089 (2010).

62.     This finding is also supported because Simms demonstrated he was capable of filing a *pro se* state habeas petition and that he could research/raise the pertinent legal issues.  There was nothing that prevented him from filing a *pro se* petition for writ of certiorari after he was timely alerted to the State Court's adverse decision and the State Court's letter indicating Simms could pursue appellate relief.  Similarly, nothing  prevented him from filing a *pro se* federal habeas petition well before six years had elapsed.  Simms demonstrated he could obtain information about the state habeas case docket through his sister, and also appeared to have access to the internet to check the docket. [Doc. 12, at 20 "In reading the internet court record, on 10/17/03, a motion to waive conflict of interest was filed....").] After not communicating with habeas counsel after apparently November 2004, there is no reason it took six years for him to realize his habeas attorney had "abandoned" him or no longer represented him.

63.     The Tenth Circuit and district courts have similarly held that a petitioner does not act diligently for purposes of equitable tolling when years pass without taking action.  For example, in

Law v. Jones, the district court determined that extraordinary circumstances existed to justify equitable tolling, but that the petitioner did not act with sufficient diligence. Law, 2011 WL 846872, *4 (N.D. Okla. Mar. 8, 2011) (unpublished), *cert. denied*, 433 F. App'x 651 (10th Cir. Aug. 5, 2011). In Law, the petitioner argued equitable tolling should excuse his late filing because of egregious misconduct by his attorney, habeas counsel's failure to file the petitioner's habeas petition despite numerous communications from the petitioner's family members attempting to determine whether a petition had been filed, affidavits of two family members describing their roles in retaining habeas counsel and their efforts to correspond with counsel, payment to counsel, communications from counsel to family members stating that the petition was timely filed and instructing the family that no further contact was necessary, the family member's testimony that at the petitioner's request, she telephoned the Clerk's Office for the Northern District of Oklahoma to inquire as to the status of the case, but was informed there was no record of a habeas petition having been filed. In Law, family members of the petitioner filed a grievance against counsel that contributed to the suspension of that attorney. Notwithstanding the finding of extraordinary circumstances, the district court was convinced that the petitioner's two-year delay in filing the petition did not demonstrate reasonable diligence. Id., *5 (close to two years passed from the time the petitioner learned counsel had not filed the habeas petition before the petitioner filed his *pro se* petition, in contrast to the factual scenario in Holland, 130 S.Ct. at 2565, where the petitioner prepared and filed a *pro se* petition "the very day" he discovered that the limitations period had expired due to attorney's failings).

64.     The same is true in Ellibee v. Roberts, 122 F. App'x 963, 965 (10th Cir. Feb. 16, 2005) (unpublished). In that case, the court observed that the petitioner had done "quite a lot" in diligently pursuing his appeal, with respect to the issue of equitable tolling.

> [The petitioner] wrote to the court on September 4, 1997, to inquire about the appointment of counsel; on January 10, 1998, he sought appellate counsel . . .; on February 1, 1998, he wrote the state trial judge by certified mail; on February 3, 1998, he contacted the Appellate Defender; on February 1, 1998, he contacted and retained [an] attorney [], who apparently did nothing to advance his case; in September 2000 and December 2001 he retained two other lawyers, whom he claims also failed to represent him properly.  He claims he paid these attorneys a total of approximately $15,000, plus more . . . .

Id., at 965.  Thus, while the court rejected appellees' argument that the petitioner "took no other action for over three years," it found there was a "fatal two and a half year gap" between the petitioner's last documented communication with his attorney and his communication with the next attorney.  Id.  Even giving the petitioner the benefit of the doubt with respect to every part of his story, the court found that the more than two-year period that elapsed, without action, "far exceed[ed] the statute of limitations and cannot be blamed on the state trial court, the negligence of counsel, or anyone else."  Id.

65.    The Court reaches the same conclusion as to Simms, where a period of more than six years passed before Simms filed his federal habeas petition.  He fails to demonstrate he exercised reasonable diligence in pursuing his rights when a period of six years elapsed.  Moreover, unlike the petitioner in Ellibee, Simms presented no evidence of dates he contacted counsel or the courts during that six-year period.  *See also* Ousley v. Taylor, 379 F. App'x 733 (10th Cir. May 21, 2010) (unpublished) ("[e]ven the most charitable reading of diligence cannot condone a more than ten-year delay in inquiring abut the status of an appeal"); Watson, 335 F. App'x at 744 ("we do not believe that any reasonable jurist would find that this is one of those rare and extraordinary circumstances where tolling is required[,]" where there was evidence of several motions and letters submitted over a period of nine years); Maricle v. Howard, 282 F. App'x 683, 685 (10th Cir. Jun. 20, 2008)

23

(unpublished) (a long delay of four years does not demonstrate Maricle diligently pursued his claims).

C.      <strong><em>Actual Innocence</em></strong>

66.     It is not clear whether part of Simms' position is that he qualifies for equitable tolling because he is actually innocent.  However, to the extent he does raise this argument, the Court rejects it.  Even if he could demonstrate actual innocence, Simms failed to show the requisite diligence as discussed above.  *See* <u>Broadus v. Jones</u>. 390 F. App'x 804, 808-09 (10th Cir. Aug. 12, 2010) (unpublished) (reasoning that the petitioner still must demonstrate reasonable diligence in pursuing his claims even if arguing actual innocence).

## III.    <u>Different Triggering Dates for Limitations Period</u>

67.     To the extent that Simms also argues that there was a State created impediment that prevented his timely filing, so as to trigger a later date for purposes of the one-year limitations period, the Court rejects that position.  While true that § 2244(d)(10(B) provides the limitation period shall run from the latest of four different dates, including "the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State Action," Simms did not establish that there was a state created impediment to the pursuit of his habeas petition.

68.     In <u>Sigala v. Bravo</u>, 656 F.3d 1125 (10th Cir. 2011), the petitioner made a similar argument that the Tenth Circuit rejected.  Sigala claimed he was never notified by defense counsel, the state court, or the district attorney that an amended judgment and sentence was entered in his case until years after the fact.  <u>Id.</u> at 1127.  Sigala argued that this "failure to notify was a State-created impediment that prevented him from filing a timely federal habeas petition.  <u>Id.</u>  The court

24

rejected this argument, noting that the impediment Sigala alleged was not "State action in violation of the Constitution or laws of the United States."  Id. (*citing* 28 U.S.C. § 2244(d)(1)(B)).

> Sigala was represented by counsel throughout the direct appeal of his conviction, and the record demonstrates that New Mexico courts informed his counsel of the major decisions in his case. . . .
>
> Thus, the evidence casts doubt on Sigala's claim that he lacked notice of the entry of the amended judgment and sentence in his case.  But regardless, the record establishes his counsel was properly notified of the final judgment.

69.    Here, Simms was represented by counsel through at least November 2004, after entry of the State Court's Order denying the state habeas petition.  Simms was aware of the State Court's Order as early as September 2004.  There is no evidence that Simms lacked notice of the Order denying his state petition or that a State action interfered with his ability to file a petition for writ of certiorari and/or a federal habeas petition.

70.    Title 28 U.S.C. § 2244(d)(1)(D) also provides that the limitations period might begin on "the date on which the factual predicate of the claim could have been discovered through the exercise of due diligence."  Simms argues that the statute of limitations did not begin to run until "at the earliest [he] discovered his attorney had not filed the appeal three and a half years after his appeal request." [Doc. 9, at 28.] For reasons similar to those discussed above concerning Simms' lack of diligence, the Court rejects this argument.  Simms did not provide any evidence of when he actually requested his attorney file an "appeal" or evidence showing when he discovered that his attorney had not filed a petition for writ of certiorari or a motion to reconsider.  It appears, however, that Simms had the means and ability to check the state court docket to see that nothing had been filed for at least three and a half years (and longer), if not through the internet or with the help of

family.  Had he acted with "due diligence," he should have known well before six years passed that his limitations period had expired or that the one-year limitations period had started in 2004.

### **Recommended Disposition**

The Court recommends finding that Simms did not satisfy his burden to demonstrate application of equitable tolling and further, that Simm's § 2254 petition is untimely and should therefore, be dismissed, with prejudice.[11]


_Lorenzo F. Garcia_
_____
Lorenzo F. Garcia
United States Magistrate Judge


---

[11]*See* Brown v. Roberts, 177 F. App'x  774, 778 (10th Cir. Apr. 12, 2006) (unpublished) ("Dismissal of a petition as time barred operates as a dismissal with prejudice, meaning that future applications will be treated as 'second or successive' petitions subject to the heightened requirements of § 2244(b).").